LAY, Circuit Judge,
concurring:
I concur with the judgment set forth in the majority opinion. The SEC cannot carry its burden to prove that Edwards’ lease program involved an expectation of profits to be derived solely from the efforts of others. Consequently, there is no investment contract under SEC v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), and no subject matter jurisdiction.
I write separately, however, to state my disagreement with that portion of the opinion which reaffirms broad vertical commonality as the test for common enterprise in the Eleventh Circuit. For the reasons set forth below, I respectfully submit that horizontal commonality is the only valid test for a common enterprise. Moreover, the SEC cannot carry its burden to prove horizontal commonality, and therefore, subject matter jurisdiction also is absent on this basis.
Requiring proof of horizontal commonality is the only logical approach to understanding the concept of a common enterprise. In Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 622 F.2d 216 (6th Cir.1980), the court set forth the widely accepted justification for this position. Proof of horizontal commonality is required because requiring only proof of broad vertical commonality makes How-ey ’s third prong-expectation of profits to be derived from the efforts of others-superfluous. Curran, 622 F.2d at 221-24 (citing Milnarik v. M-S Commodities, *1286 Inc., 457 F.2d 274, 275-77 (7th Cir.), cert. denied, 409 U.S. 887, 98 S.Ct. 113, 34 L.Ed.2d 144 (1972) (Stevens, J.)). “[N]o-where in Howey or later Supreme Court decisions is it intimated that [‘common enterprise’] is somehow redundant of other elements of the definition of a security.” Id. at 224 (quoting Berman v. Bache, Halsey, Stuart, Shields, Inc., 467 F.Supp. 311, 319 (S.D.Ohio 1979)). Consequently, only a requirement of horizontal commonality is consistent with the Howey test for an investment contract.[1] Indeed, in its arguments in a case out of the First Circuit, the SEC concedes that this reasoning is correct and broad vertical commonality is an inappropriate test for Howey’s common enterprise requirement. See Brief for Appellant Securities and Exchange Comm’n at 28 n. 11, SEC v. SG Ltd., 265 F.3d 42 (1st Cir.2001) (“The Commission has also long taken the position that broad vertical commonality is not an appropriate test because it collapses the second prong of the Howey test (common enterprise) into the third prong (profits to come from the efforts of others).”).
The SEC responds that analysis of the present case under a requirement of horizontal commonality is inappropriate, however, because this circuit requires only proof of broad vertical commonality under SEC v. Unique Financial Concepts, Inc., 196 F.3d 1195, 1199-1200 (11th Cir.1999); Eberhardt v. Waters, 901 F.2d 1578, 1580-81 (11th Cir.1990); and SEC v. Koscot Interplanetary, Inc., 497 F.2d 473, 478-79 (5th Cir.1974). The majority opinion finds this argument controlling. With all due respect to the law of this circuit, which I am bound to follow as a visiting judge, I must respectfully disagree that this panel is bound by precedent to require only proof of broad vertical commonality.
To the extent the SEC relies on Unique Financial Concepts and Eberhardt, the SEC’s argument is unpersuasive. In these cases, the respective panels relied on a prior panel opinion in Villeneuve v. Advanced Bus. Concepts Corp., 698 F.2d 1121 (11th Cir.1983), for the proposition that the Eleventh Circuit adheres to the broad vertical commonality test. Such reliance is misplaced.[2] The Villeneuve panel decision was vacated in an en banc decision. 730 F.2d 1403, 1404 (11th Cir.1984). The en banc court did not address that part of the panel opinion where the court adhered to the broad vertical commonality test and, thus, did not reinstate the panel’s decision in that respect. When the full circuit court vacates a panel decision and hears a case en banc, the panel opinion and judgment are totally vacated and, thus, have no precedential value in whole or in part. See 11th Cir. R. 26(k). The only binding authority is the decision of the en banc court and the opinion supporting that decision. Cf. United States v. Rice, 635 F.2d 409, 410 n. 1 (5th Cir.1981) (noting that a vacated panel decision “constitutes no precedent”). As such, Unique Financial Concepts[3] and *1287 Eberhardt, erroneously relying on the vacated panel decision in Villeneuve, offer no precedent for the proposition that the Eleventh Circuit requires only proof of broad vertical commonality.
The only question concerning the court’s authority to require proof of horizontal commonality comes from Koscot, a case out of the Fifth Circuit, which arguably binds the court notwithstanding the intervening repudiation of the theory it espoused.[4] Koscot, however, is no longer good law and, therefore, we are not bound by it. See Smith v. GTE Corp., 236 F.3d 1292, 1303 n. 11 (11th Cir.2001) (“Subsequent panels are not bound by prior decisions where there has been a change in the controlling law as a result of a subsequent ... Supreme Court decision.... ”).[5] This court has twice noted-prior to the overruled panel decision in Villeneuve-that it “has yet to decide whether Koscot and the line of cases following it conflict with Howey and [United Housing Found. Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) ].” Phillips v. Kaplus, 764 F.2d 807, 816 n. 9 (11th Cir.1985) (citing Villeneuve, 730 F.2d at 1404 n. 2). I believe that Koscot does conflict with Hoioey, per the analysis above, and For-man.
In Forman, 421 U.S. at 852, 95 S.Ct. 2051, the Supreme Court reiterated that an investment contract required “the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.” It also stated, however: “The focus of the [Securities] Acts is on the capital market of the enterprise system: the sale of securities to raise capital for profit-making purposes, the exchanges on which securities are traded, and the need for regulation to prevent fraud and to protect the interest of investors.” 421 U.S. at 849, 95 S.Ct. 2051. Koscot’s broad vertical commonality test, which would include within the purview of a common enterprise even relationships between independent individual “investors” and a single “promoter,” is antithetical to the Forman Court’s notion that the federal securities laws focus on the protection of broader capital markets. Moreover, as discussed in the majority opinion, the Foiman Court limited the definition of profits to capital appreciation or a participation in earnings. See id. at 852. These types of financial return are much more likely to be associated with participation in the broader capital markets where investors’ funds are pooled in a single enterprise. In the present case, there was no pooling of money in a common venture; thus, it is my opinion that this case does not fit within Forman’s understanding of common enterprise.
When the horizontal commonality test is applied to these facts, it is clear that the SEC also cannot carry its burden to show a common enterprise under Howey. The SEC asserts horizontal commonality can be found in the fact that Edwards operated a “massive Ponzi scheme.” I disagree. The typical Ponzi scheme involves a fraudulent business venture where early inves *1288 tors are paid off by funds obtained from later investors, rather than the business itself, with the intent of using that early “success” to entice further investment in the sham venture. See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 343-44 n. 1 (3d Cir.2001) (citing Black’s Law Dictionary 1180 (7th ed.1999)). The fact that a fledgling business uses capital rather than earnings to pay debts, however, does not automatically indicate a Ponzi scheme. It is widely recognized in the commercial world that new businesses often do not show a profit in their early years; the only way to pay debt frequently is through the recruitment of new capital. Thus, it is the nature of the business as a sham which is the crucial consideration. Here, the record indicates that ETS made a good faith effort to run a legitimate business. It dutifully managed the phones it leased for the duration of its existence and continues to do so today under its reorganization plan. At its height, it had offices in twenty-eight states and Mexico and employed 550 people. Neither fact indicates that ETS was a fraudulent enterprise, “[un]supported by any underlying business venture,” see Bald Eagle Area Sch. Dist. v. Keystone Fin. Inc., 189 F.3d 321, 323 n. 1 (3d Cir.1999) (internal citation omitted), as the SEC would have us believe.
Apart from allegations of a Ponzi scheme, the SEC cannot show horizontal commonality on the facts presented. ETS entered into distinct contracts with each investor; it did not pool their funds. See Curran, 622 F.2d at 222 (finding a pooling of investors’ interests essential to a finding of common enterprise). The success of one investor’s contract had no direct[6] impact on the success of any other; the investors were not “inextricably intertwined.” SEC v. SG Ltd., 265 F.3d 42, 52 (1st Cir.2001); Union Planters Nat’l Bank of Memphis v. Commercial Credit Bus. Loans, Inc., 651 F.2d 1174, 1183 (6th Cir.1981). The investors were entitled to a guaranteed lease payment; only ETS bore the risk of failure and it alone would have enjoyed the benefits had its business prospered. Every indication is that there was no horizontal commonality inherent in Edwards’ lease program. Consequently, subject matter jurisdiction fails on this basis as well.

.The Sixth Circuit relied a great deal on the decision of the Seventh Circuit in Milnarik, 457 F.2d at 274, written by then-Judge Stevens. The Curran court, following the reasoning of Milnarik, observed:
[W]e believe that no horizontal common enterprise can exist unless there also exists between discretionary account customers themselves some relationship which ties the fortunes of each investor to the success of the overall venture. Thus in our view the finding of a vertical common enterprise based solely on the relationship between promoter and investor is inconsistent with Howey.
Curran, 622 F.2d at 223-24.

. The district court in the present case likewise mistakenly relied on the Villeneuve panel decision.

. It should be noted that, notwithstanding its purported reliance on broad vertical commonality, the Unique Financial Concepts *1287 court based its decision on the fact that the "investors’ funds [were to] be pooled and apportioned proportionately by Appellants to each account." 196 F.3d at 1200. Thus, the court actually relied on the proofs necessary to show horizontal commonality.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. In fact, in Long v. Shultz Cattle Co., Inc., 896 F.2d 85, 88 (5th Cir.1990), the Fifth Circuit has indicated a willingness to review the vertical commonality test in an appropriate case.

. The SEC argues all "investors” in ETS shared the risk that it would go bankrupt and become unable to make lease payments; thus, it argues they are all "intertwined.” This argument should be rejected as casting far too broad a net, contrary to the Court's teaching in United Housing Found, v. Forman, 421 U.S. 837, 857 n. 24, 95 S.Ct 2051, 44 L.Ed.2d 621 (1975) (stating that mere "risk of insolvency ... 'differ[s] vastly' from the kind of risk of 'fluctuating' value associated with securities investments”) (internal citation omitted).